# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VENUS LABORATORIES, INC., d/b/a | ) | |
| EARTH FRIENDLY PRODUCTS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-CV-01617 |
| v. | ) | |
| | ) | |
| JOHN VLAHAKIS, | ) | |
| and | ) | |
| EARTHY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR A
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Venus Laboratories, Inc. ("Venus") hereby submits this Memorandum in

Support of its Motion for a Temporary Restraining Order and Preliminary Injunction, by which

Venus seeks to prohibit Defendants from using Venus' EARTHY trademark in connection with

the advertisement and purported sale of cleaning products, and specifically at the forthcoming

Natural Products Expo West Trade Show.[1]  This Temporary Restraining Order and Preliminary

Injunction is necessary to protect Venus from imminent harm.  If not immediately restrained,

Defendants will make unauthorized and infringing use of Venus' EARTHY trademark and

wrongfully hold itself out as the owner of Venus' Earthy line of cleaning products at the leading

natural products trade show in the industry.  Because of the potential exposure and confusion on

such a large stage, these actions—if not restrained—will cause Venus significant and irreparable

harm.

---

[1] In addition to claims of (i) Trademark Infringement and (ii) Unfair Competition, the Venus Complaint also includes claims for (iii) Consumer Fraud and Deceptive Trade Practices, (iv) Declaration of Venus' ownership in the EARTHY trademark, (v) False or Fraudulent Trademark Registration, and (vi) Cancellation of Trademark Registration/Imposition of Constructive Trust Over Trademark Registration.  However, because Venus' immediate need for a Temporary Restraining Order only implicates its claims of Trademark Infringement and Unfair Competition, it only moves for immediate relief on these claims.  Venus reserves its right to seek a preliminary injunction on these and the other claims in due course.

## I.    INTRODUCTION

Venus Laboratories, Inc. ("Venus") is an Illinois corporation that produces and sells environmentally conscious cleaning products. Venus sells a wide variety of products under its "dba," Earth Friendly Products, including products certified under the United States Environmental Protection Agency's "Design for the Environment" Program. One brand sold by Venus is Earthy ("Earthy Branded Products"), which was developed and sold by Venus personnel as its own premium, private label brand. Earthy Branded Products was conceived, developed, marketed and distributed wholly by Venus and its personnel. As would be expected, Venus paid the expenses associated with the development, formulation, distribution and advertisement of Earthy Branded Products.

Defendant John Vlahakis ("John") is a former employee and director of Venus. John is also the half-brother of the current CEO, Kelly Vlahakis-Hanks, and the son of the late Van Vlahakis, who founded Venus. During his employment with Venus, John was involved with the development of Earthy Branded Products, along with many other Venus employees. John was terminated as an employee of Venus in January 2015 due to egregious violations of his duties and obligations. John now claims that he owns the Earthy Branded Products brand despite the fact that (1) any development of Earthy Branded Products performed by John was solely in his course of employment at Venus (while he was paid by Venus), (2) Venus paid all expenses associated with the Earthy Branded Products, and (3) Venus itself has been the sole source of all Earthy Branded Products for the past three years.

John now seeks to market and purports to sell Earthy Branded Products on his own, despite Venus' senior rights and its demands that he cease all association with the Earthy Branded Products brand. John is using Earthy, LLC, to perpetuate this fraud. Of immediate

concern is the fact that Defendants currently are scheduled to attend and present at the Natural Products Expo West 2015 Trade Show, to be held March 6-8, 2015 in Anaheim, California. Defendants specifically intend to promote and sell Earthy Branded Products at this trade show. Defendants are also scheduled to attend the KeHe 2015 Natural Spring Show to be held shortly thereafter on April 29-30, 2015 in Indianapolis, Indiana.

Defendants' intention to perpetuate these falsehoods at the Natural Products Expo West Trade Show—the leading trade show in the natural, organic and healthy products industry— would cause irreparable harm to Venus and its Earthy Branded Products brand. Defendants' actions are violations of Venus' trademark rights in EARTHY, and diminish the mark's ability to designate a single source. For the reasons described in greater detail below, Venus respectfully requests that this Court issue a temporary restraining order and preliminary injunction against the imminent actions of Defendants.

## II. FACTUAL BACKGROUND

### A. Venus' EARTHY Brand

In 2013, Venus began selling an exclusive, private label premium brand of cleaning products called Earthy. Venus Verified Complaint, Docket No. 1, ("Venus Complaint") ¶¶ 15, 22 & Ex. 10. Venus' own company assets and employees were used to develop, manufacture and distribute this premium product line since its inception. *Id*. at ¶¶ 15, 17, 18, 19, 21. The formulations of the Earthy Branded Products were developed by Venus, and are proprietary. *Id*. at ¶ 17. Venus contracted and paid a third party, Amox Enterprises, to develop the label designs for the Earthy Branded Products. *Id*. at ¶ 20 & Ex. 9.

Venus has marketed the Earthy Branded Products as it has for other Venus products. John himself acknowledged that Venus has "footed the bill" for the Earthy Branded Products.

*Id*. at ¶ 23 & Ex. 11. Earthy Branded Products have been produced and sold exclusively by Venus. Venus' sales for the Earthy Branded Products were $38,300.37 in 2013, $47,528.09 in 2014 and $40,278.75 through January 26, 2015. *Id*. at ¶ 22 & Ex. 10. John admitted to his accountant in an e-mail on March 10, 2014 that Earthy, LLC had zero Earthy Branded Products sales revenue through 2013, in contrast to Venus' $38,300.37 in Earthy Branded Products revenue in 2013. *Id*. at ¶ 23 & Ex. 11. This further belies John's allegations in the State Action that Venus and Kelly "have known for years" about Earthy, LLC's supposed sales of "environmentally friendly cleaning products." *Id*.

John was involved in the development and promotion of Earthy Branded Products, but his involvement in Earthy Branded Products was only in his former capacity as an employee of Venus. *Id*. at ¶ 21. John himself has never paid for any development of the Earthy Branded Products or protection of the Earthy Branded Products brand; all such expenses have been borne by Venus. *Id*. at ¶¶ 15, 24.

### B. Defendants' Unlawful Acts

Despite the fact that Earthy Branded Products were solely developed, financed and sold by Venus with no revenue or commission paid to John, John now seeks to market and sell Earthy Branded Products without authorization, license, or permission from Venus. *Id*. at ¶¶ 12-14. After his termination from Venus, John advertises and purports to sell Earthy Branded Products through various websites he operates, including http://earthy.me, which is registered in the name of Defendants. *Id*. at ¶¶ 39, 40, 45, 47 & Ex. 19. These sites misappropriate Venus' EARTHY trademark, and were created while John was employed with Venus.

In addition to all development costs, Venus funded (unbeknownst to Venus at the time) the registration of the EARTHY trademark, which was fraudulently obtained in the name of

Defendants.  *Id*. at ¶¶ 28-37 & Ex. 12-14.  Defendants applied to register the EARTHY trademark at the United States Patent and Trademark Office ("USPTO") *using Venus' attorneys, and paid for, at least in part, by Venus through a retainer arrangement.  Id*.  Defendants utilized Venus' attorneys at Thompson Coburn LLP, who were on retainer for Venus during the time in question.  *Id*. at ¶¶ 30, 31 & Ex. 12.  Defendants engaged Thompson Coburn directly to apply for the EARTHY trademark registration in Defendant Earthy, LLC's name, and not in Venus' name.  To obtain this registration, Defendants had to make false representations to the USPTO in connection with the filing of the EARTHY trademark application and in the Statement of Use.  Specifically, Defendants signed declarations stating under oath that they were the legitimate owner of the trademark, and that *they* were using the trademark in commerce.  *Id*. at ¶¶ 34-37 & Ex. 14.  These statements were false, as Venus was the senior user of the mark, Venus owned all trademark rights in the EARTHY mark, and Venus, not Defendants, had been the party making use of the EARTHY trademark in commerce.  *Id*. at ¶ 33.  No agreement or license exists that grants any rights in the EARTHY trademark to Defendants.  *Id*. at ¶ 14.  Defendants were well aware that these statements were false when they made them to the USPTO.

Defendants now have made numerous unauthorized uses of the EARTHY trademark, all to Venus' detriment.  Following his termination from Venus, John has attempted to organize meetings with vendors to discuss the Earthy Branded Products.  *Id*. at ¶ 48 & Ex. 20.  Notably, John organized meetings to coincide with the Natural Products Expo West 2015 Trade Show to be held March 6-8, 2015 in Anaheim, California.  *Id*. at ¶ 41 & Ex. 15.

The Natural Products Expo West 2015 Trade Show is the most prominent trade show in the natural products industry, and Defendants intend to attend and promote at this trade show as the "owner[s] of Earthy products."  *Id*.  While still employed by Venus, John requested an

additional booth at the trade show for "Earthy," even though Venus already had signed up for a booth. *Id.* at ¶ 42 & Ex. 16. John indicated that although "[Venus] has already signed up for a booth, [] I want a separate one for [E]arthy." *Id.*

Defendants' attendance at the Expo West Trade Show is likely only the beginning of a series of events, advertisements and meetings where Defendants intend to promote themselves as the "owners" of Earthy Branded Products. Such actions by Defendants this will cause significant and irreparable harm to Venus. Defendants will act with no regard for Venus' business and could cause material harm to Venus and its Earthy Branded Products.

### III.    LEGAL STANDARDS

To obtain a temporary restraining order or preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the moving party must show: (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer an irreparable harm if the temporary restraining order or preliminary injunction is not issued. *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001). Once these are shown, the court must then consider any irreparable harm the temporary restraining order or preliminary injunction would cause the non-moving party, balancing any such harm against the irreparable harm the moving party would suffer if relief is denied. *Id.* Finally, the court considers the public interest in granting or denying the temporary restraining order or preliminary injunction. *Id.* The court applies a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Id.*

Here, Venus can amply demonstrate that it is likely to succeed on the merits, that there is no adequate remedy at law and that it will suffer irreparable injury if this temporary restraining order or preliminary injunction is not issued. The public interest would also be served, as the

public always has an interest in not having consumers confused as to the proper origin of products.

### A. Venus is Likely To Succeed on the Merits

Under the "sliding scale approach," Venus need only show that it has a "greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "This is admittedly a low requirement and is simply a threshold question." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984).

Venus requests this Temporary Restraining Order and Preliminary Injunction on its claims of trademark infringement and unfair competition. Both of these claims rely upon the same underlying facts and the same legal analysis applies to both claims. *See Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (applying same analysis to federal trademark infringement and unfair competition claims, Illinois common law trademark infringement and unfair competition claims, and claim under the Illinois Uniform Deceptive Trade Practices Act).

To prevail on these claims, Venus must show that (1) its EARTHY mark is protectable and (2) Defendants' use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). In assessing likelihood of confusion, seven factors must be analyzed: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its product as that of the plaintiff. *Ty, Inc.*, 237 F.3d at 897-98.

### 1. *Venus is the Owner of the EARTHY Trademark*

Venus is the rightful owner of the EARTHY trademark and has protectable rights therein. Venus developed Earthy Branded Products as a premium brand of cleaning products, and solely financed all development and production of the Earthy Branded Products. Venus was the senior user and has priority of use through its exclusive sale and distribution of Earthy Branded Products, selling over $125,000 worth of Earthy Branded Products since its release in 2013. This demonstrable priority of use of the EARTHY mark by Venus shows that it is the rightful owner of the EARTHY trademark.

"It has long been held that trade or service mark rights are acquired by appropriation and use, not by registration." *Heinemann v. General Motors Corp.*, 342 F. Supp. 203, 206 (N.D. Ill. 1972); *see also Zazu Designs v. L'Oreal, SA*, 979 F.2d 499, 503 (7th Cir. 1992) ("Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated."); *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 357 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark or "service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market."); *Union Nat. Bank of Texas, Laredo, Tx. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) ("Ownership of trademarks is established by use, not by registration. The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark…"). Here, all relevant, consistent, and ongoing use in commerce of the trademark on Earthy Branded Products was by Venus. Even Defendants' unauthorized and fraudulent registration of the EARTHY trademark was based on Venus' use of EARTHY: the specimens of use submitted by Defendants to evidence Defendants' use of the EARTHY

trademark were in fact product labels of the Earthy Branded Products created and marketed by Venus that Venus used on its Earthy Branded Products. Venus Cmplt. ¶ 34 & Ex. 14. Even if John were a principal officer or shareholder of the Company, which he is not, he would not be the rightful owner. "If a corporation is using a mark, then a principal officer and shareholder is not the 'owner.'" 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 16.36 (4th. ed. 2014) (citing among other cases *El Sombrero Corp. v. Bolivar*, 106 Ill. App. 3d 925, 218 U.S.P.Q. 668 (4th Dist. 1982)).[2]

Moreover, the trademark "rights" of Defendants are null and void because they were fraudulently obtained for the reasons stated in this Motion and in the Complaint. Namely, Defendants represented to the USPTO that they were the owner and user of the EARTHY trademark, when they knew that Venus was the one that developed and sold products under the EARTHY trademark. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (finding of fraud in procuring trademark registration appropriate "if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO."); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227 (10th Cir. 2000) (affirming finding of fraudulent procurement of trademark registration where defendant applied for trademark registration with knowledge that plaintiff had prior ownership of name, and had purchased product from plaintiff bearing trademark prior to applying for identical mark); *Country Fare LLC v. Lucerne Farms*, 2011 WL 2222315, *7 (D. Conn. June 7, 2011) (finding that "Defendant secured a trademark [registration] [] through fraud . . . the Plaintiff had clear

---

[2] In the Venus Complaint, Venus seeks cancellation of the EARTHY trademark registration, or in the alternative a constructive trust to transfer the registration to Venus, and asserts a claim for false or fraudulent registration of the EARTHY trademark. Because the mere existence of the trademark registration itself does not pose any immediate harm, Venus did not include this claim in its request for a Temporary Restraining Order, but Venus does reserve its right to seek a preliminary injunction on this and other claims in due course to preserve the status quo pending trial on the merits, if necessary.

rightful ownership to the [] trademark and that Defendant made material misrepresentations in its application to the Trademark Office despite its knowledge of the Plaintiff's rightful ownership of the mark.").

Any "use" claimed by Defendants of the EARTHY trademark in connection with the Earthy Branded Products is simply piggy-backing off Venus' legitimate use. Defendants purport to sell Earthy Branded Products and have websites that attempt to do so, but the advertised products are Venus' own Earthy Branded Products, not John's. Venus created, developed and manufactured the Earthy Branded Products, and all Earthy Branded Products originate from Venus. Thus, all trademark rights from such usage inures to the benefit of Venus. Defendants have no rightful claim to the EARTHY trademark.

2.      *Defendants' Use of EARTHY Is Likely to Cause Confusion*

In analyzing the seven factors to determine if there is a likelihood of confusion, all factors are in favor of Venus.[3] The trademarks are identical in appearance as Defendants are misappropriating the exact same EARTHY trademark used by Venus. The products with which Defendants purport to use the EARTHY trademark are identical; in fact, Defendants advertise the Earthy Branded Products made by Venus on its websites. Venus' and Defendants' use would be concurrent and in the same geographic area. Both parties have locations in Illinois, and both intend to advertise and promote product at the Natural Products Expo West Trade Show in California. Venus primarily sells its products, including Earthy Branded Products, through longstanding distributor relationships and having John – a "Vlahakis" with a longstanding connection with the family owned business – aggressively promoting the exact same product will

---

[3] The seven likelihood of confusion factors are: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its product as that of the plaintiff. *Ty, Inc.*, 237 F.3d at 897-98.

cause major confusion in the marketplace. Venus Cmplt. ¶ 51. The degree of care used in purchasing cleaning products is not high, as these are everyday purchases. Thus, consumers would not exercise a great deal of care and are more susceptible to confusion. In purchasing these products, consumers rely heavily on known brand names, and the fact that John, formerly with Venus, would be associated with Earthy Branded Products sold by Defendants would increase confusion. As to the strength of Venus' mark, the EARTHY mark is a distinctive mark that has acquired secondary meaning through Venus' almost three years of use with over $125,000 of sales. Actual confusion already exists in the marketplace, but the complained of activity has only just begun and Venus' investigation is continuing. *Id*. Finally, Defendants' intent weighs heavily in favor of Venus, as Defendants' intent is to misappropriate and unlawfully represent Venus' Earthy Branded Products as their own. Thus, a proper review of the likelihood of confusion factors shows that all factors here are in favor of Venus.

Having shown a likelihood of success on the merits, we must next turn to the remaining two factors in the analysis: whether an adequate remedy at law exists and if Venus will suffer irreparable harm if the relief is denied.

**B.     Venus Has No Adequate Remedy at Law and Will Suffer Irreparable Injury If Defendants are Not Restricted**

Irreparable harm and inadequate remedy at law are still presumed in trademark cases in the Northern District of Illinois. *Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803 (N.D. Ill. 2012). Even absent these presumptions, however, Venus could adequately demonstrate irreparable harm for which there is not an adequate remedy at law. In this case, Venus' EARTHY trademark and the goodwill and reputation associated with its trademark are at risk. As established above, a likelihood of confusion exists as between Defendants' unauthorized use of EARTHY and Venus' legitimate use. Consumers are likely to mistakenly

attribute to Defendants any positive attributes of Earthy Branded Products, or may attribute to Venus any defects or negative impressions, placing Venus' reputation at risk and causing "irreparable harm." *See* 5 *McCarthy on Trademarks and Unfair Competition,* § 30:47.30 (4th ed.). "This threatened and actual loss of reputation and good will cannot adequately be compensated for dollars and cents after the fact." *Id.* Such damage cannot be compensated through money damages alone because the extent of the damage cannot be calculated; the loss of consumer confidence in a brand name is not remedied by a financial award.

C.      **A Temporary Restraining Order and Preliminary Injunction Will Not Harm Defendants and is in the Public Interest**

In assessing the potential harm to Defendants, courts apply a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council*, 549 F.3d at 1086. As demonstrated above, Venus has demonstrated a strong likelihood of prevailing on the merits, thus it need not be required to show the balance of harms to weigh heavily in its favor. Nonetheless, the balance significantly weighs in Venus' favor, especially because Venus only seeks to preserve the status quo.

If a temporary restraining order or preliminary injunction were not to issue, Venus would be harmed in its business and reputation. Defendants have only just begun to promote themselves as the improper owners of the Earthy Branded Products after John's termination. Now that John has been dismissed from Venus, it is logical that Defendants' efforts to falsely promote themselves as the owners of the Earthy Branded Products will increase exponentially. The premier trade show in the industry, the Natural Products Expo West 2015 Trade Show, could be the "coming out party" for Defendants and their use of EARTHY. This trade show would allow Defendants a unique and rare opportunity to falsely promote themselves as owners

of the Earthy Branded Products to a wide range of individuals critical to the industry at one place and time. Similar marketing efforts by Defendants would also have the effect of incorrectly associating the Earth Branded Products with Defendants. Venus may not be able to rectify these impressions. Consumers and industry representatives who meet with Defendants or view any false advertising of Defendants may incorrectly believe that Earthy Branded Products is a brand of Defendants', not Venus. This false impression may never be remedied.

Defendants however, would not suffer material harm if a restraining order issues. The relief requested by Venus is intentionally narrow and restricted only to Venus' EARTHY trademark. Under the terms of the relief sought in this particular action, Defendants are free to attend trade shows, and advertise or sell any of their own products or services under another brand. Similarly, Defendants are free to pursue any other permissible business opportunities in the industry. The only restriction on Defendants sought in this motion is that they cannot continue to use and infringe upon Venus' EARTHY trademark. Even in the unlikely event that Defendants ultimately prevail in this action, their sole harm would be a delay.

Given Venus' high likelihood of success, any harm to Defendants is speculative and should be afforded little, if any, weight. *See Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Ind. Ass'n*, 929 F. Supp. 473, 478 (D.D.C 1996) (balancing of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark"). The likely harm to Venus would vastly exceed any possible harm to Defendants.

Finally, as is typical in this type of action, the public interest also favors the issuance of a temporary restraining order or preliminary injunction, as it will prevent consumer confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("the public interest is served by the injunction because enforcement of the trademark laws prevents consumer

confusion"). The Seventh Circuit has recognized that the public interest is served by protecting trademarks and avoiding consumer confusion. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n. 2 (7th Cir. 1988). Accordingly, the public interest favors entry of a temporary restraining order or preliminary injunction.

## IV. SECURITY OR BOND IS NOT REQUIRED

Rule 65(c) of the Federal Rules of Civil Procedure provides that the court may issue a preliminary injunction or temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The purpose of such a security is to compensate the defendant for the harm caused by an injunction should the defendant ultimately prevail on the merits. *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). The amount of bond or security is in the court's discretion; in some instances, courts have declined to impose ordering a bond or security where the movant has demonstrated a strong likelihood of success on the merits or where the injunction is unlikely to cause the enjoined party damages. *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) ("Considering this as well as the strong likelihood of success on the merits which the plaintiffs have demonstrated, we find that the district court did not abuse its discretion in failing to require the plaintiffs to post a security."); *see also Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("The district court may dispense with the filing of a bond when it concludes there is no realist likelihood of harm to the defendant from enjoining his or her conduct.").

Here, Venus has demonstrated a strong likelihood of success on the merits. Any potential harm to Defendants would be minimal, if any. If Defendants ultimately prevail on the merits, they can simply resume advertising and selling Earthy Branded Products. The only potential

harm to Defendants would be limited to the cost of their registration and attendance at the Natural Products Expo West 2015 Trade Show on March 6-8, 2015 in Anaheim, California. Accordingly, Venus respectfully requests that if bond is required, that the bond requirement be set solely as the cost to Defendants to attend the Natural Products Expo West 2015 Trade Show.

## V. CONCLUSION

As demonstrated above, Venus' ultimate success on the merits is exceedingly likely. If Defendants are permitted to hold themselves out as owners of Earthy Branded Products or the EARTHY mark at the trade show, the damage to Venus will be substantial and irreparable because of the exposure of this prominent trade show, for which Venus will have no adequate remedy at law. Defendants have no rights in the EARTHY mark and are solely attempting to improperly benefit from the rights that Venus itself has developed and cultivated.

Accordingly, based on the arguments above and the Venus Complaint, Venus respectfully requests that the Court enter a temporary restraining order and preliminary injunction enjoining Defendants' use of the EARTHY trademark and the specific relief requested in Venus' Motion For a Temporary Restraining Order and Preliminary Injunction.

Respectfully Submitted,

VENUS LABORATORIES, INC.

Dated: February 25, 2015      By    /s/ Darren S. Cahr
                                          Darren S. Cahr
                                          Jeffrey T. Baravetto
                                          Alexius Cruz O'Malley
                                          DRINKER BIDDLE & REATH LLP
                                          191 N. Wacker Dr. Suite 3700
                                          Chicago, IL 60606
                                          (312) 569-1000
                                          *Counsel for Plaintiff Venus
                                          Laboratories, Inc.*

78730165.6

- 15 -