# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Venus Laboratories, Inc., d/b/a Earth Friendly Products<br><br>    Plaintiff,<br><br>v.<br><br>John Vlahakis, and Earthy, LLC,<br><br>    Defendants. | Case No. 15 C 1617<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This matter concerns a dispute over the ownership, registration, and use of the "Earthy" Trademark, No. 4,664,428 (the "Trademark"). Plaintiff Venus Laboratories, Inc. filed this action on February 23, 2015 alleging false or fraudulent trademark registration, trademark infringement, and unfair competition under the Lanham Act, as well as consumer fraud and deceptive trade practices under Illinois Law. Plaintiff also advanced counts seeking declaratory judgment and the cancellation of the Trademark registration, or placement of the Trademark registration in a constructive trust for transfer to the proper owner.

Now before the Court is Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction on its claims for trademark infringement and unfair competition. [10] at 1, n.1. Defendants John Vlahakis and Earthy, LLC were given notice of this Motion, and all parties had a full and fair opportunity to be heard. This Court, having heard the evidence before it and for the reasons set forth below,

1

hereby GRANTS Plaintiff's request for a temporary restraining order, and enters and continues the request for a preliminary injunction pending further proceedings.

## I. Background

Plaintiff Venus Laboratories Inc. ("Venus") is an Illinois corporation that produces and sells environmentally conscious cleaning products. [1] Venus' Verified Complaint ("V. Complt.") at ¶¶ 1, 7. Venus sells a wide variety of products under its "dba," Earth Friendly Products. Defendant John Vlahakis ("John") is a former employee and director of Venus. [16-1] JV Declaration ("JV Dec.") at ¶¶ 9, 26. He is the son of the now-deceased founder of Venus, Van Vlahakis, and the half-brother of current CEO Kelly Vlahakis-Hanks ("Kelly"). [1] V. Complt. ¶ 2. Kelly terminated John's employment with Venus on January 16, 2015. [16-1] JV Dec. at ¶ 26. Defendant Earthy, LLC is an Illinois company that was organized by John Vlahakis on February 5, 2010. *Id.* at ¶ 1.

At issue in this matter is the Earthy branded line of cleaning products and personal products ("Earthy Branded Products"). Both parties claim ownership over the Earthy brand. John contends that, while employed by Venus, he independently – and outside the scope of his duties as an employee of Venus – developed the products, the branding, and the sales for Earthy Branded Products. [16] D. Resp. at ¶ 4. Venus claims that it developed the Earthy Branded Products using company assets and employees – including John working in his capacity as an employee of Venus. [1] V. Complt. at ¶ 15, 21. Various company employees were involved in the development and branding of Earthy products. *Id.* at ¶ 18; [16-2] JV Complt. ¶ 37.

2

It is disputed whether they helped John as a personal favor, or were working within the scope of their employment with Venus. *Id*.

Venus has evidence showing sales of the Earthy Branded Products by Venus that resulted in $38,300.37 in revenue in 2013, $47,528.09 in 2014, and $40,278.75 in 2015. [1] V. Complt. at ¶ 22. At the evidentiary hearing, Venus also presented evidence of sales of Earthy Branded Products to specific clients starting in 2013. P. TRO Exs. 2-4. John has presented no evidence of Earthy branded product sales through Earthy LLC or any of his websites. On March 10, 2014, John stated in an e-mail to his accountant that "Earthy [LLC] has no revenue or expenses" to report for tax purposes in 2013 and that "EFP [Venus] is footing the bill right now [for Earthy Branded Products]." [1] V. Complt. at ¶ 23. John claims, however, that he developed and owned the Earthy brand and chose to use Venus as a contract manufacturer. [16-2] JV Dec. at ¶ 41. He has provided no evidence of any contract establishing that arrangement. The only evidence presented on this topic suggests that no such contract existed. V. Complt. at ¶¶ 13-14. John has also provided no evidence, beyond his own declaration, of any sales or marketing work that he did for Earthy Branded Products on behalf of Earthy LLC, as opposed to Venus.

On May 24, 2013, John, while an employee and director of Venus, applied to the United States Patent and Trademark Office ("PTO") to federally register the Earthy Trademark in the name of Earthy LLC. [16-2] JV Dec. at ¶ 34. The PTO issued a federal registration to Earthy LLC on December 30, 2014 (Reg. No. 4,664,428). *Id*. That trademark was for the Earthy logo that Venus had previously

used in commerce on its Earthy Branded Products. [1] V. Complt. ¶ 29. John directly engaged Venus' counsel at the time, Thompson Coburn, to apply to register the Earthy trademark. [1] V. Complt. ¶ 31. Venus paid Thompson Coburn a monthly general retainer during that time period, while John himself paid Thompson Coburn directly for the trademark related services. *Id*. at ¶ 31; [16-2] JV Dec. at ¶ 34.

On July 22, 2014, John, as President of Venus, signed a Brokerage Agreement between Presence Marketing/Dynamic Presence and Earth Friendly Products (Venus). P. TRO Ex. 5. Under that agreement, Presence Marketing/Dynamic Presence was appointed as Venus' sole sales representative for Earthy Branded Products. *Id*.

As mentioned, John was terminated from Venus on January 16, 2015. [16-2] JV Dec. at ¶ 26. While still employed by Venus, John requested and attempted to schedule separate meetings with third parties during the Expo West 2015 Trade Show on March 6-8 in Anaheim, California. [1] V. Complt. at ¶ 41. The Expo West 2015 Trade Show is the most prominent tradeshow in the natural products industry, and Defendants plan to attend to advertise Earthy branded products on behalf of Earthy LLC, not Venus. *Id*. at ¶ 41, Ex. 15; JV Dec. at ¶ 67.

II. **Analysis**

A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if

preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, then the court must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). The court also considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Storck*, 14 F.3d 311, 314. The court then weighs all of these factors, "sitting as would a chancellor in equity," *Abbott*, 971 F.2d at 12, and applies a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

### A. Likelihood of Success on the Merits

Under the sliding scale approach, a party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). "This is admittedly a low requirement and is simply a threshold question." *Id.* To prevail on a trademark infringement claim, plaintiff must show that (1) its mark is protectable and (2) defendant's use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

5

### i. Ownership of the Protectable Mark

Here, the disputed issue is not whether the Earthy trademark is protectable, but who has ownership of that mark. "It has long been held that trade or service mark rights are acquired by appropriation and use, not by registration." *Heinemann v. General Motors Corp.*, 342 F. Supp. 203, 206 (N.D. Ill. 1972); *see also Zazu Designs v. L'Oreal*, SA, 979 F.2d 499, 503 (7th Cir. 1992) ("Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated"). Further, though a trademark registration may raise a rebuttable presumption of ownership in favor of the registrant, 14 U.S.C. § 1115(a), that can be overcome by showing that the mark was wrongfully registered. *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) ("The presumption of validity that federal registration confers . . . evaporates as soon as evidence of invalidity is presented").

The evidence before the Court at this time shows that the Plaintiff has a likelihood of success on its claim of trademark ownership. Plaintiff has provided evidence that it has used the mark in connection with sales of earth friendly cleaning products since 2013. [1] V. Complt. Ex. 10; P. TRO Exs. 2-4. The Defendants' contradictory evidence, coming mainly in the form of John's declaration, is not as compelling as Venus' evidence of actual sales. Defendants have shown no evidence of sales made by Earthy LLC and no contract or licensing agreement indicating that Venus was merely manufacturing Earthy branded products on behalf of the Defendants. Additionally, the agreement between Venus

and Presence Marketing – signed by John as President of Venus on July 22, 2014 – suggests that Venus was the owner of the Trademark at that time. P. TRO Ex. 5. As such, the evidence currently before the Court indicates that Venus was the first to use the Earthy trademark in commerce to sell earth friendly cleaning products. It also suggests that Venus has consistently used that Trademark since 2013. This evidence entitles Venus to ownership of the mark, *Heineman*, 342 F. Supp. at 206, and would render Defendants' subsequent registration invalid. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (finding of fraud in procuring trademark registration appropriate "if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO"); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227 (10th Cir. 2000) (affirming finding of fraudulent procurement of trademark registration where defendant applied for trademark registration with knowledge that plaintiff had prior ownership of name).

### ii. Likelihood of Confusion

In assessing likelihood of confusion, seven factors must be analyzed: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its product as that of the plaintiff. *Ty, Inc.*, 237 F.3d at 897-98.

7

Plaintiff has shown a likelihood of success on the merits with regard to confusion. The trademarks at issue here are identical in appearance, as both parties seek to use the exact same mark. The products at issue are also identical, as both parties seek to sell the same products bearing the Earthy trademark. The use of the trademark at issue would be concurrent and in the same geographic area. Both parties have locations in Illinois and, more pressingly for the purpose of this Order, both plan to promote Earthy branded products at the Natural Products Expo West Trade Show. Further, Venus sells its Earthy branded products through established distributor channels that have previously been worked, at least in part, by John. It is reasonable to expect that John will return to those same channels to promote and sell Earthy branded products on behalf of Earthy LLC. The degree of care used in purchasing cleaning products is not particularly high, as they are generally everyday purchases that are not high dollar items. As to the strength of the mark, the evidence currently before the Court suggests that the Earthy mark is a distinctive mark that has acquired secondary meaning through at least three years of use in connection with the sale and purchase of cleaning supplies.

There is evidence that the competing use of the Earthy mark has already caused actual confusion in the marketplace. On February 19, 2015, Linda Stern, an account executive with WFMT/WTTW Chicago, contacted John via e-mail and advised him that she went to Treasure Island (a local grocery chain) where she "asked for Earthy dishwashing liquid." The salesperson responded by asking "if [Linda] meant Earth Friendly [dishwashing liquid]." V. Complt. at ¶ 51, Ex. 21.

Finally, the intent prong also weighs in favor of a likelihood of confusion as the Defendants intend to sell Earthy branded products as their own. This would create a situation in which there are two companies promoting the same brand as their own, which would inevitably further the creation of confusion in the market.

**B. Inadequate Remedy at Law/Irreparable Harm**

The parties agree that irreparable harm and inadequate remedy at law are presumed in trademark infringement cases in the Northern District of Illinois. [16] D. Resp. at 13; [10] P. Mtn. at 11; *see also Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803 (N.D. Ill. 2012). "If it is likely that confused persons will mistakenly attribute to plaintiff defects or negative impressions they have of defendant's goods or services, then the plaintiff's reputation is at risk." 5 McCarthy on Trademarks and Unfair Competition, § 30:47.30 (4th ed.). "This threatened and actual loss of reputation and good will cannot adequately be compensated for in dollars and cents after the fact." *Id*.

Defendant has not presented sufficient evidence to rebut the presumption of irreparable harm and inadequate remedy. Even without the benefit of that presumption, Plaintiff has provided sufficient evidence to support a finding of irreparable harm and inadequate remedy. As established above, a likelihood of confusion exists between Defendants' and Venus' use of the Earthy trademark. Consumers are likely to mistakenly attribute to Defendants any positive attributes of Earthy branded products, or may attribute to Venus any defects or negative impressions, placing Venus' reputation at risk and causing irreparable harm. The

9

risk of irreparable harm is particularly relevant here because, should the Defendants proceed with manufacturing Earthy branded products, they would have to do so with a different manufacturer. This would increase the risk that the products sold by Defendants would be manufactured defectively, or in some way different or perhaps inferior to products that have been manufactured by Venus since 2013.

**C. Balancing of Harms**

In assessing the potential harm to Defendants, courts apply a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council*, 549 F.3d at 1086. "Even if a plaintiff's suit appears to have merit, an injunction should not necessarily issue if the harm to the defendant would substantially outweigh the benefit to the plaintiff." *Michigan v. U.S. Corps of Army Engineers*, 667 F.3d 765, 789 (7th Cir. 2011).

The balance of harms to the Defendant here does not substantially outweigh the benefit to the Plaintiff. If this Temporary Restraining Order were to not issue, the Plaintiff would be harmed by having a competitor company offering an identical product under the same brand name. This would harm the business prospects, goodwill and reputation of the Plaintiff, a company that is currently selling Earthy Branded Products and has been since 2013. The evidence indicates that the Defendants have just begun attempting to sell Earthy Branded Products via Earthy LLC. The evidence further suggests that they do not currently have a manufacturer

10

for their products. Any damage they suffer over the short duration of this Temporary Restraining Order, i.e. sales of Earthy products by Venus or the loss of business opportunities to Venus, could – if Defendants eventually prevail – be redressed through money damages. The Defendants could fairly easily assess the sales made by the Plaintiff during the period of the restraining order and be compensated accordingly. Unlike the Plaintiff, Defendants do not appear to have any risk of damage to reputation or goodwill as, according to the evidence shown thus far, they have not been actively selling Earthy Branded Products on their own behalf.

### D. Public Interest

In trademark actions the public interest favors the issuance of a temporary restraining order where it will prevent consumer confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion"). The Seventh Circuit has recognized that the public interest is served by protecting trademarks and avoiding consumer confusion. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n. 8 (7th Cir. 1988).

This Court has indicated that there is a likelihood that confusion would result in the absence of a restraining order. As such, the issuance of such an order is in the public interest.

**E. Bond**

Federal Rule of Civil Procedure 65(c) requires a party obtaining a temporary restraining order to post a bond sufficient to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of such a security is to compensate the defendant for the harm caused by an injunction should the defendant ultimately prevail on the merits. *Ty, Inc.*, 292 F.3d at 516 (7th Cir. 2002).

As set out below, the Court orders that the Plaintiff deposit with the Court $50,000 dollars as bond. This number is calculated to reflect potential lost sales and business opportunities by Defendants during the duration of the Temporary Restraining Order. It is based in part on the previous Earthy Branded Product sales of the Plaintiff.

**III. Conclusion**

Based upon the briefs and affidavits filed by the parties, the evidence presented at the evidentiary hearing, and the arguments of counsel in open court, the Court finds that Plaintiff has sustained its burden and demonstrated some likelihood of success on the merits at this time. The Court also finds that Plaintiff likely lacks an adequate remedy at law and will suffer irreparable harm should a temporary restraining order not be issued. The balance of the hardships additionally weighs in Plaintiff's favor, as does the public interest.

NOW THEREFORE, it is ORDERED that Defendants John Vlahakis, Earthy, LLC and its officers, agents, servants, employees, and persons in active concert or participation with it, are temporarily enjoined and restrained from:

1. Advertising, soliciting, marketing, selling, offering for sale or otherwise using the Earthy trademark in connection with cleaning products and personal products;

2. Contacting or otherwise engaging any third parties regarding Earthy Branded Products, including but not limited to the sale of Earthy Branded Products, promoting Earthy Branded Products or holding themselves out as owners or being otherwise associated with Earthy Branded Products;

3. Advertising, marketing, selling, offering for sale or otherwise using the Earthy Branded Products at the Natural Products Expo West 2015 Trade Show to be held March 6-8, 2015 in Anaheim, California, or any other industry tradeshow;

4. Representing themselves as owners of Earthy Branded Products and executing agreements or attempting to conduct business on behalf of Earthy Branded Products.

5. Plaintiffs shall deposit with the Court Fifty Thousand Dollars ($50,000.00), either cash or surety bond, as security, which amount was determined adequate for the payment of such damages as the

Defendants may be entitled to recover as a result of a wrongful restraint hereunder.

6. This Temporary Restraining Order is entered at 4:30 p.m., on this 5th day of March 2015. With the parties' express consent and for good cause shown in the ongoing attempts to resolve this matter by way of a mediation conference scheduled for March 19, 2015, the Temporary Restraining Order shall remain in effect through April 2, 2015.

7. The request for a preliminary injunction is hereby entered and continued for further evidentiary proceedings at 1:30 p.m., on March 25, 2015, in Courtroom 2201.

IT IS SO ORDERED

Dated: March 5, 2015

_____
Judge John Robert Blakey
United States District Court